UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JEREMY R. POWELL,<br><br>    Plaintiff<br><br>v.<br><br>CITY OF ELKO, et al.,<br><br>    Defendants | Case No.: 3:21-cv-00418-ART-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 153 |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendants Ortiz's and Pepper's motion for partial summary judgment. (ECF Nos. 153, 153-1 to 153-3). Plaintiff filed a response (ECF No. 171), and Ortiz and Pepper filed a reply (ECF No. 175).

After a thorough review, it is recommended that Ortiz's and Pepper's motion be denied.

**I. BACKGROUND**

When Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, he was an inmate in the custody of the Nevada Department of Corrections (NDOC); however, the alleged events took place when he was an arrestee in Elko, Nevada, and then a detainee in the Elko County Jail. Plaintiff was subsequently paroled in Nevada, but was extradited to Utah. (*See* ECF No. 123.)

The court screened Plaintiff's amended complaint, and allowed him to proceed with the following claims: (1) a Fourth Amendment excessive force claim against Ortiz alleging that Ortiz struck Plaintiff twice with his baton, drove his knee into Plaintiff's back, and smashed

Plaintiff's face into the pavement; (2) a Fourth Amendment claim that Pepper and Hood failed to intervene to stop Ortiz's use of excessive force; (3) a Fourth Amendment excessive force claim against Ortiz based on allegations that after Plaintiff was cleared by the hospital, Ortiz bent Plaintiff's thumb to the point where it popped and Plaintiff believed it was broken; (4) an equal protection claim against Ortiz based on allegations that immediately after his arrest, Ortiz used racially-charged language against Plaintiff creating the inference that he targeted Plaintiff for mistreatment based on his race and ethnicity; (5) a Fourth Amendment inadequate medical care claim against Pepper and Ortiz based on allegations that they refused to take Plaintiff back to the hospital after Ortiz injured Plaintiff's thumb and Pepper had been notified of the alleged assault; and (6) a Fourteenth Amendment inadequate medical care claim against Garcia, Contreras and Adkins based on allegations that he notified them of the injury to his thumb when he was detained in the jail, but they failed to provide him with any treatment for 12 days. (ECF Nos. 68, 69, 98.)

Ortiz and Pepper move for partial summary judgment only as to the excessive force claim surrounding his initial apprehension and arrest. They argue that they are entitled to qualified immunity on this claim because the body camera footage unequivocally demonstrates that their actions were objectively reasonable and justified.[1]

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

---

[1] Defendants Adkins and Hood (ECF No. 155) and Contreras and Garcia (ECF No. 158) have also filed motions for summary judgment, which will each be addressed in separate report and recommendation.

*v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

3

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021)

(citing *Saucier v. Katz,* 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

Plaintiff alleges on July 8, 2020, he attempted to elude law enforcement in a vehicle pursuit that ended in a rollover accident[2], and then on foot. He acknowledges that at the initial point of his apprehension, he resisted arrest and was struck with a baton before he was tackled and placed under arrest. His claim focuses on the sequence of events that followed his being tackled and taken to the ground. He avers that once he was on the ground, he stopped resisting, became cooperative, and surrendered to his arrest. He claims that as he was lying prone on his stomach, detained and handcuffed, Ortiz struck him with his baton twice in the upper back and neck region and then jumped on Plaintiff's back, driving his knee into Plaintiff and then ran his baton across the back of Plaintiff's head with extreme force, smearing Plaintiff's face into the pavement. (ECF No. 69 at 5-6.)

Claims of excessive force during an arrest or other seizure of a free citizen are evaluated under the Fourth Amendment and apply an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc). This analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted).

---

[2] Plaintiff suffered no injuries in the accident.

The objective reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citation omitted). The most important factor is "whether the subject posed an 'immediate threat to the safety of the officers or others.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (quoting *Smith*, 394 F.3d at 702).

These factors are not exhaustive, and courts are "to examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case[.]'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Courts conduct their evaluation of reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).

"'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ... violates the Fourth Amendment." *Id*. (citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith*, 394 F.3d at 701 (citation and quotation marks omitted).

### A. The Body Camera Footage

Defendants submit Ortiz's body camera footage from the incident. The video begins with Ortiz and Pepper in a vehicle, and Ortiz gets out of the vehicle and can be heard telling a third party (Plaintiff) to stop their vehicle as Plaintiff was suspected of being involved in a theft. Instead of stopping, the vehicle drives away. Ortiz and Pepper begin to follow the vehicle and they, along with other law enforcement officials, engage in a vehicle chase for approximately 20 minutes, where speeds are reported at times up to 70 mph.

Plaintiff acknowledges that his vehicle eventually crashed, and at that point, he got out and ran across the interstate, attempting to evade law enforcement on foot.

Pepper eventually stops the patrol vehicle and Ortiz gets out and runs toward two individuals who can be seen on the side of a road in an embrace. Ortiz is pointing his firearm toward them while yelling at them to "get down." Plaintiff starts to walk away from Ortiz. Ortiz yells, "let me see your hands! I'll f***ing shoot you!" Plaintiff puts his hands up and turns toward Ortiz. However, Plaintiff turns around again, and slowly starts walking in the opposite direction of Ortiz, still with his hands up. Ortiz attempts to grab Plaintiff, but Plaintiff slips out of his grasp when the sweatshirt Plaintiff is wearing comes off. At that point, Plaintiff initially looks as if he is going to run away, but then he turns back toward Ortiz. Ortiz yells at Plaintiff to get down, and then takes out his baton and starts swinging it at Plaintiff while continuing to yell at Plaintiff to get down. Several more law enforcement vehicles can be seen driving up as Ortiz is swinging the baton at Plaintiff.

Another officer (Pepper), suddenly comes from behind and tackles Plaintiff to the ground. Ortiz still has his baton in his hand and can be seen hitting Plaintiff with the baton. While this is occurring, Pepper is sitting on top of Plaintiff and Plaintiff appears to have one

hand (the left) covering his head. Pepper can be seen grabbing Plaintiff's left arm/hand. It is not clear where his other (right) hand is at this point. Ortiz takes his baton with one hand on each end and thrusts it down into the back of Plaintiff's neck above the shoulder blades, raises it up and then thrusts it back behind Plaintiff's neck again, pushing Plaintiff's head and neck down toward the ground. As Ortiz does so, Plaintiff moves his other (right) arm from what looks like underneath his torso to under his head. At that point, Pepper says, "give me your hands." Ortiz yells what sounds like, "get behind you!" Ortiz can be seen pushing the baton down across Plaintiff's neck. Someone yells at Plaintiff to get his hands behind his back, and Pepper grabs the right hand and moves it behind Plaintiff's back. Ortiz continues to push the baton down into the back of Plaintiff's neck. It appears that Pepper places his knee on Plaintiff's back. Plaintiff then says what sounds like, "I'm not even fighting" several times. Plaintiff is then placed in handcuffs, and Ortiz retracts his baton and pushes down on Plaintiff's head as stands up.

**B. Type and Amount of Force**

Relevant to the court's inquiry are the "nature and degree of physical contact" and "the risk of harm and the actual harm experienced." *Williamson v. City of Nat'l City*, 23 F.4th 1151, 1152 (9th Cir. 2022) (citation and quotation marks omitted).

Defendants acknowledge that an officer's use of a baton blows is an intermediate level of force that is considered a significant use of force capable of causing pain and bodily injury. *See Young v. County of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011) (citation omitted).

The parties dispute the nature and degree of the physical contact in this case. Defendants argue that Ortiz simply held Plaintiff's head down with the baton until Pepper managed to secure Plaintiff's hands in restraints. They assert that Ortiz did not strike Powell with the baton or press his knee into Plaintiff's back after he was handcuffed. Plaintiff, on the other hand, maintains that

once he was lying down in a prone position on his stomach, Ortiz drove the baton into the back of his head and neck with extreme force.

Defendants also point to the fact that Plaintiff did not require medical treatment related to this incident, which suggests the use of force was minimal. Plaintiff does not dispute that he received medical clearance before being taken to the jail. Plaintiff presents evidence, however, that in the days and months following the incident, he complained of pain in his neck and back, and received treatment and was prescribed medication for his injuries. (ECF No. 171 at 63-95.)

In sum, there is a dispute of material fact as to the nature and degree of force used. Taking the facts in the light most favorable to Plaintiff, a jury could conclude that the force was significant and as such, constituted a serious intrusion upon his liberty.

**C. Governmental Interest**

The court must now consider the factors identified in *Graham* and any other relevant factors under the circumstances.

First, the court considers the severity of the crime at issue.

The precipitating event that led to the police chase was Plaintiff being suspected of committing an auto burglary and theft earlier that day. (ECF No. 171 at 160.) Of more importance to the court's inquiry here, is his subsequent action of leading law enforcement on a 20 minute vehicle chase that involved high speeds. Plaintiff ultimately pled no contest to: eluding a police officer in a manner posing danger to persons or property (a felony); attempted assault with a deadly weapon (a felony); and receiving, possessing or withholding stolen goods (a felony). (ECF No. 153-3.)

Plaintiff led officers on a vehicle chase and then attempted to evade police on foot. This was undoubtedly a very dangerous situation. While this would ordinarily militate in favor of

Defendants, the court must also consider that at the time the force in question was used, Plaintiff had crashed his vehicle, was on foot, and had been tackled to the ground by Pepper, who was sitting on the top of Plaintiff. Plaintiff was in a prone position, on his stomach, facing the ground, and multiple law enforcement officials were present at the scene. *See Andrews v. City of Henderson*, 35 F.4th 710, 717 (9th Cir. 2022) (citation omitted) ("We do not suggest that the severity of the suspected crime has no bearing on whether a suspect poses a threat to officers or the public—of course it does. … But the serious nature of a suspected crime does not *necessarily* give rise to a strong governmental interest in the use of significant physical force."). In *Andrews*, the court found that even though Andrews was suspected of a serious crime, "viewing the evidence in his favor, the detectives knew that he was not armed and was not posing an immediate threat to anyone[;]" therefore, the nature of the crime "provide[d] little, if any basis for the officers' use of physical force." *Id*. at 717-18 (citation and quotation marks omitted). Taking the seriousness of Plaintiff's crime into account along with the circumstances of his ultimate apprehension, this factor is somewhat neutral, neither militating in favor or against either side.

      Second, the court considers the most important factor—whether the suspect posed an immediate threat to the safety of the officers or others. The parties dispute whether Plaintiff posed an immediate threat.

      Defendants argue that at the time the force was used, they could not know whether Plaintiff had a weapon, and so they were potentially at risk before Plaintiff was placed in handcuffs. Plaintiff argues that he did not pose a threat when he was face down on the ground with a law enforcement officer on top of him.

Ortiz's own report, however, says that he holstered his firearm before Plaintiff was taken to the ground because he did not believe Plaintiff was armed, and Ortiz does not argue he had any reason to believe Plaintiff was armed. (ECF No. 171 at 160.) "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (citation and quotation marks omitted).

While Plaintiff admits he had previously taken a defensive stance toward Ortiz, the court must consider the "danger a suspect poses *at the time force is applied*." *Andrews v. City of Henderson*, 35 F.4th 710, 717 (9th Cir. 2022) (internal citation and quotation marks omitted, emphasis original). At the point the force at issue was used, Plaintiff was on the ground, underneath Pepper, and multiple other law enforcement officers were present at the scene.

The credibility of Ortiz's claim that the officers feared that Plaintiff potentially had a weapon and Plaintiff's claim that he posed no threat "presents a genuine question of material fact that must be resolved not by a court ruling on a motion for summary judgment but by a jury in its capacity as the trier of fact." *Young*, 655 F.3d at 1163-64 (citation omitted).

Third, the court considers whether the suspect was actively resisting or attempting to evade arrest by flight. The parties likewise dispute whether Plaintiff was resisting.

Defendants maintain that even after he was placed on the ground, Plaintiff resisted efforts to move his hands behind his back, at first holding his left hand near his head, and then moving his right hand under his head once his left hand had been placed behind his back.

Plaintiff asserts that when he was taken to the ground, he quit resisting, gave up, rolled onto his stomach and allowed the officers to maintain control and did not fight his attempts to restrain Plaintiff. (ECF No. 171 at 27.)

11

In the video, Plaintiff can be seen moving his right arm at one point so that it is underneath his head. A jury could conclude that he was resisting efforts to be restrained. A jury could also reasonably conclude that this movement was a reasonable response to Ortiz's use of the baton against him. "[A]n officer's 'provocative conduct' can trigger an individual's 'limited right to offer reasonable resistance.'" *Young*, 655 F.3d at 1164 (quoting *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 921 (9th Cir. 2001)) (jury could conclude the plaintiff's conduct of moving and circling was a reasonable response after he was pepper sprayed); *Blankenhorn v. City of Orange*, 485 F.3d 463, 479-80 (9th Cir. 2007) (jury could conclude that there was a limited right to resistance where plaintiff was gang tackled without warning)). In addition, when Plaintiff moved his hand, Pepper immediately was able to grab it, and Plaintiff was placed in restraints. Ultimately, there is a genuine dispute of material fact as to whether Plaintiff was resisting.

**D. Balance of Interests**

The court must balance whether the "degree of force used was warranted by the governmental interests at stake[.]" *Andrews*, 35 F.4th at 718 (citation and quotation marks omitted). Here, there are genuinely disputed facts that prevent the court from engaging in a definitive balancing. Taking the facts in the light most favorable to the Plaintiff, the jury could conclude that the amount of force was significant under the circumstances, that Plaintiff did not pose an immediate threat, and that he was not resisting. In sum, if the jury resolves the factual disputes in Plaintiff's favor, it could determine that the force used was excessive. On the other hand, if the facts are resolved in Defendants' favor, it could conclude that the force used was objectively reasonable.

///

**E. Clearly Established Right**

Even if a defendant violates a constitutional right, he is entitled to qualified immunity "unless the violated right was clearly established at the time of the incident." *Andrews*, 35 F.4th at 718.

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). "Although this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "'[S]pecificity is especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id*. (quoting *Mullenix*, 577 U.S. at 12)). "Precedent involving similar facts can help move a case beyond the otherwise hazy borders between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Kisela v. Hughes*, 584 U.S. ---, ---, 138 S.Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks and citation omitted).

In *Blankenhorn v. City of Orange*, the court noted that where there are genuine disputes of material facts relevant to an excessive force claim, "summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party." 485 F.3d at 477 (citation omitted). In that case, while the severity of the alleged crime

(misdemeanor trespass) was minimal, the jury could conclude that the suspect did not pose a serious threat to the officers' or others' safety, and was not actively resisting. As such, the court concluded the defendants were on notice that their conduct could violate the Fourth Amendment. *Id*. at 478-79. The court found this was the case even where the suspect initially resisted being arrested. *Id*. at 480.

In *Zion v. County of Orange*, it was clearly established that "continued force against a suspect who has been brought to the ground can violate the Fourth Amendment." 874 F.3d 1072, 1076 (9th Cir. 2017) (citations omitted).

In *Jones v. Las Vegas Metropolitan Police Department*, the suspect had run away from a traffic stop, but he had not threatened the officer and did not appear to have a weapon, and the court said it was initially reasonable for the officer to use a taser. 873 F.3d 1123, 1130 (9th Cir. 2017). "As the situation evolved, however, the justification for the use of force waned." *Id*. The court found there was a triable issue of material fact as to whether the officers used excessive force when they continued to use intermediate force when the suspect was prone and on the ground, had no weapon and was not threatening officers while he was being handcuffed. The court also found it was clearly established that intermediate force "generally can't be used on a prone suspect who exhibits no resistance, carries no weapon, is surrounded by sufficient officers to restrain him and is not suspected of a violent crime." *Id*. at 1132.

Here, taking the facts in the light most favorable to Plaintiff, the jury could conclude that Plaintiff was in a prone position, was not resisting, did not have a weapon, and was surrounded by sufficient officers to restrain him. In addition, while Plaintiff was suspected of being engaged in a dangerous crime (eluding police in a vehicle), it was not necessarily a violent crime.

Taking the allegations in the light most favorable to Plaintiff, the law was sufficiently clear that Defendants' conduct could violate the Fourth Amendment.

Admittedly, this is a close case, and courts are "generally loath to second-guess law enforcement officer's actions in a dangerous situation," *Hyde v. Wilcox*, 23 F.4th 863, 872 (9th Cir. 2022). However, the court ultimately finds that it is the province of the jury to determine the disputed factual issues, and consequently, whether these Defendants' actions constitute excessive force or whether their conduct was objectively reasonable.

For these reasons, Ortiz's and Pepper's motion for partial summary judgment should be denied.[3]

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** the motion for partial summary judgment filed by Ortiz and Pepper (ECF No. 153).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

---

[3] Plaintiff's response contains many statements regarding his equal protection claim. However, that claim is not the subject of this motion for partial summary judgment; therefore, the court has not addressed those statements.

15

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 8, 2024

_____
Craig S. Denney
United States Magistrate Judge