UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JEREMY R. POWELL,<br><br>    Plaintiff<br><br>v.<br><br>CITY OF ELKO, et al.,<br><br>    Defendants | Case No.: 3:21-cv-00418-ART-CSD<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 155 |

    This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court is the motion for summary judgment filed by defendants Hood and Adkins. (ECF No. 155.) Despite being given an extension of time, Plaintiff failed to file a response. (*See* ECF No. 174.)

    After a thorough review, it is recommended that Hood's and Adkins' motion be granted.

**I. BACKGROUND**

    When Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, he was an inmate in the custody of the Nevada Department of Corrections (NDOC). However, the alleged events took place when he was an arrestee in Elko, Nevada, and then a detainee in the Elko County Jail. Plaintiff was subsequently paroled in Nevada, but he was extradited to Utah. (*See* ECF No. 123.)

    The court screened Plaintiff's amended complaint, and allowed him to proceed with the following claims: (1) a Fourth Amendment excessive force claim against Ortiz alleging that Ortiz struck Plaintiff twice with his baton, drove his knee into Plaintiff's back, and smashed

Plaintiff's face into the pavement; (2) a Fourth Amendment claim that Pepper and Hood failed to intervene to stop Ortiz's use of excessive force; (3) a Fourth Amendment excessive force claim against Ortiz based on allegations that after Plaintiff was cleared by the hospital, Ortiz bent Plaintiff's thumb to the point where it popped and Plaintiff believed it was broken; (4) an equal protection claim against Ortiz based on allegations that immediately after his arrest, Ortiz used racially-charged language against Plaintiff creating the inference that he targeted Plaintiff for mistreatment based on his race and ethnicity; (5) a Fourth Amendment inadequate medical care claim against Pepper and Ortiz based on allegations that they refused to take Plaintiff back to the hospital after Ortiz injured Plaintiff's thumb and Pepper had been notified of the alleged assault; and (6) a Fourteenth Amendment inadequate medical care claim against Garcia, Contreras, and Adkins based on allegations that he notified them of the injury to his thumb when he was detained in the jail, but they failed to provide him with any treatment for 12 days. (ECF Nos. 68, 69, 98.)

Hood and Adkins move for summary judgment.[1] Hood argues that he did not use excessive force and Plaintiff cannot establish a duty to intervene. Adkins argues that he did not deny Plaintiff adequate medical care. Hood and Adkins also argue they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

---

[1] Defendants Ortiz and Pepper have filed a motion for partial summary judgment (ECF No. 153) and defendants Garcia and Contreras have filed a motion for summary judgment (ECF No. 158). The court has issued a separate report and recommendation for each of these motions.

1  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

3

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Hood**

Plaintiff alleges that Hood failed to intervene during the alleged use of excessive force by Ortiz during his apprehension and arrest. Plaintiff alleges that after Pepper tackled him, Hood

4

moved to secure Plaintiff's arms and hands and put handcuffs on him. Plaintiff alleges that it was at this point that Ortiz began striking Plaintiff with his baton and instead of stopping the assault, Hood continued to hold Plaintiff by the handcuffs as if to keep Plaintiff pinned down "to absorb the full brunt of the assault." (ECF No. 69 at 8.)

"Officers can be held liable for failing to intercede in situations where excessive force is claimed to be employed by other officers only if 'they had an opportunity to intercede.'" *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000)). "Furthermore, officers can be held liable for excessive force on a theory of integral participation only if they participate 'in some meaningful way' in the specific actions that constituted the violation." *Id.* (citing *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004)).

In *Cunningham*, the Ninth Circuit concluded that non-shooting officers present at the scene "had no 'realistic opportunity' to intercede," and thus, could not be held liable for failing to intercede to prevent the shooting of the plaintiffs. 229 F.3d at 1290. In *Hughes*, the Ninth Circuit held that certain defendants could not "be held liable for fleeting acts which they did not commit, came without warning, and could not have prevented." *Hughes*, 31 F.4th at 1223.

Hood submits video footage to support his position: both Ortiz's bodycam footage and video taken by a third-party bystander. The bystander's video shows a Sheriff's truck pull up alongside of Ortiz, Pepper, and Plaintiff[2] and then shows Pepper tackle Plaintiff to the ground while Ortiz continues to swing his baton at Plaintiff. At that point, Ortiz, Pepper, and Plaintiff are

---

[2] Hood's motion as well as the motion of Ortiz and Pepper identifies each of these individuals, as well as Hood, in the video.

5

on the side of the Sheriff's vehicle. Hood gets out of the Sheriff's vehicle.[3] Hood walks around the back of the vehicle and can be seen trying to place something into his belt holster when Ortiz is seen pressing the baton into the back of Plaintiff's neck area and Pepper is sitting over the top of Plaintiff. As soon as Pepper secures Plaintiff's hands behind his back, Hood moves behind Pepper and applies handcuffs to Plaintiff's wrists.

Assuming that Ortiz's conduct amounts to excessive force[4], there is no evidence that Hood had a realistic opportunity to intercede. The time between when Hood comes out of his vehicle until he is applying the handcuffs is approximately fifteen seconds. The period of time when Ortiz is allegedly using excessive force against Plaintiff takes place over a period of just seconds. During most of that time, Hood can be seen looking down at his belt holster attempting to place something in the holster. There is no evidence that Hood knew the alleged use of force by Ortiz would occur, that Hood actually participated in the use of force, or that Hood had any realistic opportunity to stop the force from being used. Hood's only role was quickly placing handcuffs on Plaintiff once Pepper was able to secure Plaintiff's hands behind his back. Plaintiff has not opposed this motion to create a genuine dispute of material fact as to whether Hood had a reasonable opportunity to intercede. Therefore, summary judgment should be granted in Hood's favor.

///

///

---

[3] Hood is distinguished from Ortiz and Pepper because Hood is wearing a green uniform while Ortiz and Pepper are in black uniforms

[4] The court has simultaneously recommended that Ortiz's and Pepper's motion for partial summary judgment as to the excessive force claim related to his apprehension and arrest be denied due to the existence of material factual disputes. In that motion, Pepper did not argue that he did not have a realistic opportunity to intercede in the alleged use of force.

**B. Adkins**

Plaintiff alleges inadequate medical care by Adkins related to his thumb pain during booking at the Elko County Jail.

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego,* 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). "For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment." *Id*. "However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state. Accordingly, their rights arise under the Fourteenth Amendment's Due Process Clause." *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36, n. 16).

Following the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (pretrial detainee claim of excessive force), and the Ninth Circuit's decision in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (pretrial detainee failure to protect claim), the Ninth Circuit held in *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018), that "claims for violations of the right to adequate medical care brought by pretrial detainees against individuals under the Fourteenth Amendment must [also] be evaluated under an objective deliberate indifference standard[.]" 888 F.3d at 1124-25 (internal quotation marks and citation omitted). The elements of such a claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at a substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct

        obvious; and (iv) by not taking such measures, the defendant
caused the plaintiff's injuries.

*Id*. "The mere lack of due care by a state official does not deprive an individual of life, liberty or property under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1125 (internal quotation marks and citations omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*. (internal quotation marks and citation omitted).

      When Plaintiff was initially brought to the jail for booking, Adkins was advised there had been a roll-over accident, and that Plaintiff was complaining of pain. Adkins instructed officers to transport Plaintiff to Northern Nevada Regional Hospital (NNRH) for evaluation. (Adkins' response to Interrogatory 1, ECF No. 155-1 at 7-8; Pl. response to Request for Admission (RFA) No. 1, ECF No. 155-1 at 21, 28; ECF No. 155-1 at 61.) Plaintiff was transported to the hospital and was medically cleared for detention, and then returned to the jail. (Adkins' response to Interrogatory 1, ECF No. 155-1 at 7-8; ECF No. 155-1 at 46, 48.)

      Plaintiff claims that Ortiz broke his thumb before he was returned to the jail. He alleges that during the pre-booking medical intake, he told defendant Garcia he believed his thumb was broken and needed medical attention. (ECF No. 69 at 14.) Plaintiff went to finish the booking process, and he alleges he told Adkins that his thumb was broken and he needed to go back to the hospital, and he showed Adkins his hand. Plaintiff avers that Adkins told Plaintiff that they were "aware of it" and they were "working on it." Plaintiff claims his hand was never properly examined, and he was not given emergency medical transport. (*Id*. at 16-17.) Plaintiff asserts that he was left to suffer in pain for 12 days until medical staff at the jail arranged for him to see a physician. (*Id*. at 17.)

8

1    Jail staff are not medically trained. Instead, healthcare is provided to inmates at the jail by
2 medical personnel pursuant to a contract with Medallus. (Adkins' response to Interrogatories 1,
3 2, 5, ECF No. 155-1 at 7-8, 10.) Adkins advised Plaintiff he was not medically trained and
4 Plaintiff had just received medical clearance. Adkins also told Plaintiff that if he believed his
5 thumb was broken, he should place a medical kite to request medical treatment. (Adkins
6 response to Interrogatory No. 11, ECF No. 155-1 at 12-13.) The next day, medical personnel
7 prescribed Tylenol, provided a Toradol injection and ordered x-rays. (ECF No. 155-1 at 61.)

8    Had medical personnel advised Adkins that Plaintiff required emergency transport back
9 to the hospital, Adkins would have taken the actions necessary to facilitate that transport;
10 however, no such action was recommended by medical personnel. (Adkins' response to
11 Interrogatory 16, ECF No. 155-1 at 15.) Plaintiff continued to receive medical attention at the jail
12 for his thumb, including recommended medications, splints, wraps, and transport to medically-
13 related appointments. (ECF No. 155-1 at 50-61.)

14    On this record, medical personnel did not request that Plaintiff be transported back to the
15 hospital, and Adkins instructed Plaintiff to fill out a medical request form regarding his thumb.
16 Plaintiff has not opposed the motion to create a genuine dispute of material fact. Under these
17 circumstances, the court cannot conclude that Adkins' conduct was objectively unreasonable.
18 Therefore, it is recommended that summary judgment be granted in Adkins' favor.
19 ///
20 ///
21 ///
22 ///
23 ///

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** the motion for summary judgment of defendants Hood and Adkins (ECF No. 155).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 8, 2024

_____
Craig S. Denney
United States Magistrate Judge