# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JEREMY R. POWELL, | Case No.: 3:21-cv-00418-ART-CSD |
| Plaintiff | **Report & Recommendation of**<br>**United States Magistrate Judge** |
| v. | Re: ECF No. 158 |
| CITY OF ELKO, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is a motion for summary judgment filed by defendants Garcia and Contreras. (ECF No. 158.) Plaintiff filed a response. (ECF No. 172.) Defendants filed a reply. (ECF No. 176.)

After a thorough review, it is recommended that Garcia's and Contreras' motion be granted.

## I. BACKGROUND

When Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, he was an inmate in the custody of the Nevada Department of Corrections (NDOC). However, the alleged events took place when he was an arrestee in Elko, Nevada, and then a detainee in the Elko County Jail. Plaintiff was subsequently paroled in Nevada, but he was extradited to Utah. (*See* ECF No. 123.)

The court screened Plaintiff's amended complaint, and allowed him to proceed with the following claims: (1) a Fourth Amendment excessive force claim against Ortiz alleging that

Ortiz struck Plaintiff twice with his baton, drove his knee into Plaintiff's back, and smashed Plaintiff's face into the pavement; (2) a Fourth Amendment claim that Pepper and Hood failed to intervene to stop Ortiz's use of excessive force; (3) a Fourth Amendment excessive force claim against Ortiz based on allegations that after Plaintiff was cleared by the hospital, Ortiz bent Plaintiff's thumb to the point where it popped and Plaintiff believed it was broken; (4) an equal protection claim against Ortiz based on allegations that immediately after his arrest, Ortiz used racially-charged language against Plaintiff creating the inference that he targeted Plaintiff for mistreatment based on his race and ethnicity; (5) a Fourth Amendment inadequate medical care claim against Pepper and Ortiz based on allegations that they refused to take Plaintiff back to the hospital after Ortiz injured Plaintiff's thumb and Pepper had been notified of the alleged assault; and (6) a Fourteenth Amendment inadequate medical care claim against Garcia, Contreras, and Adkins based on allegations that he notified them of the injury to his thumb when he was detained in the jail, but they failed to provide him with any treatment for 12 days. (ECF Nos. 68, 69, 98.)

Garcia and Contreras move for summary judgment. They argue that they were medical assistants (MAs) and not medical providers in a position to make treatment decisions or implement care plans. In addition, they contend Plaintiff received adequate medical care from medical providers at the jail, including prompt and timely referrals for specialist care, which they helped to facilitate.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

*v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Local Rules**

As a preliminary matter, the court reminds both parties of their obligation to comply with the Local Rules. Defendants' filings do not have numbered lines or consecutive page numbers as

4

required by Local Rule IA 10-1(a)(1) and (5). Both parties included copies of cases even though Local Rule IA 10-3 specifically instructs that cases must *not* be attached as exhibits if they are accessible on Westlaw or LexisNexis.

**B. Legal Standard**

"Individuals in state custody have a constitutional right to adequate medical treatment." *Sandoval v. County of San Diego,* 985 F.3d 657, 667 (9th Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). "For inmates serving custodial sentences following a criminal conviction, that right is part of the Eighth Amendment's guarantee against cruel and unusual punishment." *Id.* "However, pretrial detainees have not yet been convicted of a crime and therefore are not subject to punishment by the state. Accordingly, their rights arise under the Fourteenth Amendment's Due Process Clause." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36, n. 16).

Following the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (pretrial detainee claim of excessive force), and the Ninth Circuit's decision in *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (pretrial detainee failure to protect claim), the Ninth Circuit held in *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018), that "claims for violations of the right to adequate medical care brought by pretrial detainees against individuals under the Fourteenth Amendment must [also] be evaluated under an objective deliberate indifference standard[.]" 888 F.3d at 1124-25 (internal quotation marks and citation omitted). The elements of such a claim are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at a substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk

> involved—making the consequences of the defendant's conduct
> obvious; and (iv) by not taking such measures, the defendant
> caused the plaintiff's injuries.

*Id*. "The mere lack of due care by a state official does not deprive an individual of life, liberty or property under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1125 (internal quotation marks and citations omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*. (internal quotation marks and citation omitted).

**C. Facts**

Plaintiff acknowledges that on July 8, 2020, he was evading police in a vehicle, which resulted in his being involved in a roll-over accident and while he initially tried to run from police on foot, he was eventually apprehended by police and brought to the Elko County Jail. Once he arrived at the jail, and it was made known he was involved in a roll-over accident, it was determined that Plaintiff would need to be taken to the Northern Nevada Regional Hospital (NNRH) for medical clearance before he could be booked into the jail. Plaintiff was taken to NNRH and medically cleared. Plaintiff alleges that after he received this medical clearance, but before he was taken back to the jail, defendant Ortiz assaulted him and injured his thumb. Plaintiff was then taken back to the jail for booking.

Plaintiff alleges that he participated in a pre-booking medical intake evaluation with non-defendant MA Summer Ethridge and defendant Garcia. Garcia denies that she participated in this intake evaluation. Plaintiff maintains that he told Ethridge and Garcia that he had been assaulted by Ortiz, was in pain and that he believed his thumb required immediate medical attention and he should be taken back to the hospital. Again, Garcia disputes this fact. Plaintiff claims that the next morning, he told Contreras and Ethridge about the incident and that he needed to be taken to the hospital, but they ignored his pleas for medical attention. Contreras disputes this fact.

6

1    There is a pre-booking triage form from July 8, 2020, that lists Plaintiff's vitals, and

2 indicates had an injury to his left shoulder and wrist/hand, but did not need transport to the

3 hospital. It is signed by MA Etheridge. (ECF No. 172 at 80.)

4    MA Etheridge put a note in Plaintiff's chart on July 9, 2020, that she was called to

5 Plaintiff's cell in booking for wrist pain and swelling, and Plaintiff could not bend his thumb and

6 was in a lot of pain. She noted that "per Gabe," he had been given Tylenol 2000 mg and a

7 Toradol injection 60mg, and the provider requested to order an x-ray. (Aff. of Dr.

8 Vacharothone[1], ECF No. 96-2 ¶ 11; ECF No. 155-1 at 61.) According to Dr. Vacharothone, a

9 Medallus provider signed the x-ray order on July 10, 2020. (ECF No. 96-2 ¶ 11.) Contreras

10 disputes that she examined Plaintiff's hand, as this is the responsibility of the medical provider,

11 but acknowledges that she noted that his hand was swollen and that an imaging request was in

12 process. (Contreras response to Interrogatory No. 6, ECF No. 172 at 215-16.)

13    Plaintiff had his hand x-ray on July 17, 2020, which revealed a radial subluxation at the

14 thumb carpometacarpal joint, that was concerning for a ligamentous injury. The radiologist said

15 that an MRI could better assess for soft tissue injury, but no fracture was apparent. (ECF No.

16 155-1 at 89; ECF No. 96-2 ¶ 12.)

17    That same day, Plaintiff sent an inmate request form stating that he feared permanent

18 damage without treatment and said he needed an MRI, an ACE bandage wrap, and pain relief. In

19 response, there is a notation that Plaintiff was to have a consult with Ortho and be given

20 Naproxen and Tylenol. (ECF Nos. 172 at 86; 155-1 at 87.)

21

22

23

---

[1] Dr. Vacharothone is a principal of Medallus Medical, which has contracted to provide medical services to inmates at the Elko County Jail.

1    Plaintiff was seen for his right hand injury on July 20, 2020. It was noted that he was

2 taking ibuprofen 800 mg, and he was given an ACE wrap, and was instructed to apply Bengay

3 until he could be seen by ortho. (ECF Nos. 172 at 87; 155-1 at 85.)

4    Plaintiff had the MRI of his left wrist on July 28, 2020, which showed persistent dorsal

5 and lateral dislocation of the first metacarpal base and a bone contusion at the first metacarpal

6 base with a full thickness tear of the proximal ulnar collateral ligament of the thumb

7 metacarpophalangeal joint and low grade muscle strain. He was to be referred to orthopedics.

8 (ECF No. 172 at 93-94.)

9    Plaintiff sent a medical request form on August 3, 2020, asking for a medical plan of

10 treatment, diagnosis and specialist evaluation for his thumb. In response he was told by "Balley"

11 that he had been scheduled for treatment. (ECF No. 172 at 97.) On August 8, 2020, he asked

12 what treatment he was to receive. He was advised he had not been scheduled for any procedures,

13 but had been referred to a specialist. He was told that the county had approved the referral, but

14 two orthopedic doctors had denied his case and medical was working on finding another

15 specialist so he could be seen. This was reviewed by Joanna, presumably referring to Joanna

16 Contreras. (*Id*. at 98.)

17    He sent another request for care on August 14, 2020. (*Id*. at 99.)

18    Plaintiff saw Dr. Richard Davis at Humboldt General Hospital on August 21, 2020.

19 Plaintiff reported that he had been splinted with a thumb spica splint over the prior month.

20 Plaintiff was assessed with chronic CMC joint dislocation of the left thumb. It was recommended

21 that Plaintiff have trapezial excision ligament reconstruction with tendon interposition

22 arthroplasty to restore stability to the thumb axis and take away the potential for arthritis at the

23

1  damaged joint. Plaintiff was agreeable and was advised that he would be placed on the operating

2  schedule in September when the doctor returned to Winnemucca. (*Id*. at 61.)

3       Plaintiff saw Dr. Ludwig Kroner for a follow up on September 8, 2020, who agreed with

4  the plan for surgery. (*Id*. at 62.) Plaintiff had surgery with Dr. Kroner on September 9, 2020. (*Id*.

5  at 63-64, 100.)

6  **D. Analysis**

7       In his affidavit, Dr. Vacharothone states that Medallus providers ordered x-rays for

8  Plaintiff's thumb within a day of learning of his complaint, which complied with the standard of

9  care. Then, when the injury was confirmed by MRI, Medallus arranged for a consultation with a

10 specialist—a qualified hand surgeon—and Plaintiff had surgery within six weeks of his MRI

11 diagnosis. Dr. Vacharothone concludes that Medallus and its providers appropriately addressed

12 Plaintiff's concerns of injuries to his thumb, arranged for appropriate diagnostic testing and made

13 referrals to qualified specialists within a reasonable time. (ECF No. 96-2 ¶¶ 17-18.)

14      Plaintiff alleges that during the pre-booking medical intake, he reported his thumb injury

15 to Garcia and requested to go back to the hospital, showing Garcia his visibly swollen hand, but

16 Plaintiff was not taken back to the hospital. Then the next morning, he alleges that he told

17 Contreras about his injury and need for medical care and showed her his hand, and she told

18 Plaintiff that they were aware but did not arrange for him to get treatment or go back to the

19 hospital. He claims that he continued to request treatment over the next week, to no avail.

20      Plaintiff does not dispute, however, that Garcia and Contreras are Mas, and neither is a

21 medical provider that can diagnose a condition or prescribe a course of treatment. He does not

22 dispute that at least as of July 10, 2020, a provider had been made aware of his condition and

23 ordered an x-ray, which took place a week later. The radiologist recommended an MRI to

confirm his diagnosis, and that was ordered and took place within another week. Once the MRI

occurred, a Medallus provider referred Plaintiff to a hand specialist, and while two orthopedists

apparently declined Plaintiff's case, Plaintiff was seen by a hand specialist within a few weeks of

his MRI. The specialist specifically noted that Plaintiff would be placed on the operating

schedule the following month, when he returned to the area, and Plaintiff had surgery on

September 9, 2020.

Plaintiff argues that had he been sent to the hospital or received treatment sooner, his

injury would not have been so severe or he would not have required reconstructive surgery or a

required a less extensive surgery, but he provides *no evidence* to support his conclusion.

Regardless of whether Plaintiff told Garcia or Contreras about his injury on intake or the

following morning, a provider was alerted to Plaintiff's injury within a reasonable time, and x-

rays were immediately ordered, an MRI followed, and then referral to a specialist and surgery.

There is no evidence that Garcia or Contreras, as MAs, had any control over Plaintiff's actual

treatment, or the timeframe within which Plaintiff was seen by outside providers.

On this record, the court cannot conclude that Garcia's or Contreras' conduct was

objectively unreasonable, and summary judgment should be granted in their favor.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING**

Defendants Garcia's and Contreras' motion for summary judgment (ECF No. 158).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

this Report and Recommendation within fourteen days of being served with a copy of the Report

and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

      2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 8, 2024

_____
Craig S. Denney
United States Magistrate Judge