UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JEREMY R. POWELL,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br>CITY OF ELKO, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 3:21-cv-00418-ART-CSD<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION (ECF NO. 180) |

*Pro se* Plaintiff Jeremy Powell brings this action under 42 U.S.C. § 1983 against Defendants Bartolo Ortiz and Brenton Pepper for their allegedly unconstitutional behavior during and immediately after Mr. Powell's arrest.

Before the Court is Defendants' motion for partial summary judgment (ECF No. 153) on one of Powell's two excessive force claims against Ortiz and his failure to intervene claim against Pepper. United States Magistrate Judge Craig S. Denney has issued a Report and Recommendation ("R&R") (ECF No. 180) recommending denial of Defendants' motion. Defendants have filed a set of objections to that R&R. (ECF No. 183.) For the reasons identified below, the Court overrules Defendants' objections, adopts the R&R in substantial part, and denies the motion for summary judgment.

**I.　FACTS**

The Court adopts the facts as recited in Judge Denney's Report and Recommendation. (ECF No. 180 at 1-2, 7-8.)

This order concerns Powell's claims that (1) Ortiz used unnecessary force when arresting Powell and (2) Pepper failed to intervene in Ortiz's use of force.

Parties have submitted two recordings of the arrest in question, which serve as the primary factual basis for the present objections. (ECF Nos. 153-2, 153-2.)

1

In June of 2023, Defendants filed a motion for summary judgment seeking to dismiss Powell's excessive force and failure to intervene claims. (ECF No. 153.) Judge Denney then issued a report and recommendation, recommending denial of Defendants motion, (ECF No. 180) and Defendants timely objected (ECF No. 183). Defendants specifically lay out seven objections, almost all of which challenge Judge Denney's determination that issues of material fact exist as to (1) whether Ortiz's conduct constituted excessive force and (2) whether Ortiz is entitled to qualified immunity.

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT

A party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to

make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' . . . In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25.

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

**B. QUALIFIED IMMUNITY**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit rather than a defense to liability, and "ensures that officers are on notice their conduct is unlawful before being subjected to suit." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014).

In deciding whether officers are entitled to qualified immunity, courts consider (1) whether the facts show that the officer's conduct violated a constitutional right, and (2) if so, whether that right was clearly established at the time of the alleged violation. *Id.* The plaintiff bears the burden of proof that the right allegedly violated was clearly established. *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir.1991). Thus, the plaintiff must prove that "a reasonable officer would have had fair notice that the action was unlawful." *Tarabochia*, 766 F.3d at 1125 (internal quotation marks omitted). A government official's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [the] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

While a case directly on point is not required for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Further, the right must be defined at "the appropriate level of generality," and a court "must not allow an overly generalized or excessively specific construction of the right to guide [its] analysis." *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000); *see also al-Kidd*, 563 U.S. at 741-42. The relevant question is whether the state of the law at the time

gives officials fair warning that their conduct is unconstitutional. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

In the summary judgment context, judgment is appropriate in favor of the moving party only if, "taking the facts in the light most favorable to [the non-moving party], a reasonable jury could not find that the officer's conduct violated a constitutional right." *Young v. Cnty. Of Los Angeles*, 655 F.3d 1156, 1160 (9th Cir. 2011) (internal quotation marks omitted). Thus, a court adjudicating qualified immunity at the summary judgment stage must make two determinations: "(1) whether the law governing the conduct at issue was clearly established and (2) whether the facts as alleged could support a reasonable belief that the conduct in question conformed to the established law." *Green v. City & County of San Francisco*, 751 F.3d 1039, 1052 (9th Cir. 2014).

**C. EXCESSIVE FORCE**

"Claims for excessive force are analyzed under the Fourth Amendment's prohibition against unreasonable seizures using the framework articulated in *Graham v. Connor*." *Young*, 655 F.3d at 1161 (citing 490 U.S. 386 (1989)). Under this framework, courts must determine whether the government's "seizure," i.e., use of force, was "'objectively reasonable' in light of the facts and circumstances confronting them . . . ." *Graham*, 490 U.S. at 397. This determination requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted).

On one side of this balancing, courts are called to determine the "nature and quality of the intrusion"—that is, the "type and amount of force inflicted. *Young*, 655 F.3d at 1161 (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001). Both parties to this case agree that baton blows typically constitute "intermediate force," which is a "form[] of force capable of inflicting significant pain and causing serious injury" and constitute "a significant intrusion upon an

individual's liberty interests." *Young*, 655 F.3d at 1161. The parties in this case disagree as to whether the use of a baton to restrain a suspect can sometimes constitute intermediate force and whether it did in this case.

On the other side of the balancing test, courts are called to weigh the government's interest in the challenged use of force. Courts evaluating the government's interest look to "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003). These factors are non-exhaustive, and the second factor is the most important. *Young*, 655 F.3d at 1163.

The use of force must be analyzed under an "objective" standard. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "An officer's evil intention will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* This "reasonableness" must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396-97.

**D. REVIEW OF REPORTS AND RECOMMENDATIONS**

Under the Federal Magistrates Act, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de*

*novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III. DISCUSSION

Defendants raise seven objections to Judge Denney's R&R. The Court addresses each of these objections below.

### A. OBJECTION 1

Defendants object that some of the allegations on which Judge Denney relies are contradicted by the video evidence and cannot be used to establish a genuine issue of material fact. The Court mostly overrules this objection, with a few caveats identified below.

A district court ruling on a motion for summary judgment may not consider factual allegations that are "blatantly contradicted" by video evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But when the video evidence is unclear or subject to multiple interpretations, it is the jury's role, not the court's, to interpret that evidence. *See Hughes v. Rodriguez*, 31 F.4th 1211, 1219-20 (9th Cir. 2022) (overruling a district court's determination that video evidence "blatantly contradicted" one party's excessive force allegations when the only camera to capture the alleged use of force "was not pointed directly at the fray").

Powell alleges that he "was lying prone on his stomach, detained and handcuffed, [when] Ortiz struck him with his baton twice in the upper back and neck region and then jumped on Plaintiff's back, driving his knee into Plaintiff and then ran his baton across the back of Plaintiff's head with extreme force, smearing Plaintiff's face into the pavement." (ECF No. 180 at 5.)

Here, the video footage clearly shows that Defendant Ortiz struck Mr. Powell at least once in the upper back and neck region while Powell was prone. (ECF No. 153-1 at 22:15-22:22.) The video evidence blatantly contradicts any

1 allegation that Mr. Powell was handcuffed until the final six seconds of Defendant
2 Ortiz's alleged use of force. (*Id.* at 22:35-22:41.) There is an issue of fact as to
3 whether Ortiz's use of his baton constituted two or even three "strikes." (*Id.* at
4 22:15-22:22.) There is an issue of fact as to whether Mr. Powell was "detained"
5 when those strikes occurred, and a reasonable juror could find that Mr. Powell
6 was detained as soon as he was brought to the ground, before Defendant Ortiz
7 brought his first prone-strike. (*See id.* at 22:13-22:18.) The video evidence clearly
8 contradicts any allegation that Ortiz put his knee on Mr. Powell's back—the knee
9 in question appears to have belonged to one of two other arresting officers. (*Id.* at
10 22:29-22:42.) While the video evidence may not support a claim that Ortiz
11 "jumped on Plaintiff's back," a reasonable juror could find that Ortiz used his
12 baton to drive his bodyweight into Powell's neck and back and pressed Powell's
13 skull against the pavement with significant force. (ECF No. 153-2 at 00:26-00:29.)
14 A reasonable juror could find that this use of the baton was both excessive and
15 dangerous and that it lasted around sixteen seconds. (*Id.* at 22:19-22:37; ECF
16 No. 153-2 at 00:25-46.) Likewise, a reasonable juror could find that Ortiz pressed
17 his bodyweight into Powell's skull, after Powell was handcuffed and subdued, in
18 order to stand up. (ECF Nos. 153-1 at 22:35-22:41; 153-2 at 00:44-00:47.)

19 The video evidence does not show that Ortiz had his knee on Powell's back
20 or that Powell was handcuffed for the majority of the encounter. The video
21 evidence does not contradict, however, any of the other allegations that
22 Defendants contest. This portion of Defendants' objection is overruled.

23 Defendants also object that Judge Denney erred when he categorized
24 Ortiz's use of a baton to subdue Mr. Powell as a use of intermediate force.

25 The categorization of Ortiz's force—as intermediate or otherwise—is
26 important to the first part of the excessive force test, which asks courts to weigh
27 the "type and amount of force inflicted." *Young*, 655 F.3d at 1161. The Ninth
28 Circuit has held summary judgment inappropriate on an excessive force claim

8

1 where facts existed to support a finding that officers used intermediate force on
2 a recently-resistant person, once that person had been subdued. *Jones v. Las*
3 *Vegas Mun. Police Dep't*, 873 F.3d 1123, 1131 (9th Cir. 2017).

4 The level of force that Ortiz used against Powell is an issue of fact. A jury
5 could reasonably find, as Defendants suggest, that Ortiz used his baton as a less-
6 violent restraining device, i.e., less than intermediate force. A jury could also
7 reasonably find that Ortiz used the baton as a weapon, by placing a significant
8 portion of his bodyweight on Powell's neck and pressing his head into the
9 pavement. Such use of the baton would constitute intermediate force. *See Young*
10 *v. Cnty. Of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011) (holding the use of
11 baton blows to be a form of intermediate force and noting that officers in some
12 jurisdictions are taught that batons, and head impacts in general, can cause deep
13 bruising, blood clots, and even death). Further, the video evidence shows that
14 Ortiz landed at least one full-force baton blow on Powell when he was already on
15 the ground. (ECF No. 153-1 at 22:16-22:18.) This is also a use of intermediate
16 force, and a jury could reasonably find that Powell was already subdued when
17 the use of force occurred.

18 **B. OBJECTION 2**

19 Defendants next object that (1) Judge Denney was wrong to consider
20 Defendant Ortiz's subjective beliefs when considering whether Powell posed a
21 threat to Ortiz or others and (2) there is no issue of fact as to whether Powell did
22 pose such a threat. The Court overrules this objection, insofar as it contests the
23 consideration of Ortiz's subjective beliefs as irrelevant under an objective
24 standard.

25 As for Defendants' first point, the "reasonableness" of an officer's use of
26 force must be reviewed under an "objective" standard. *Graham*, 490 U.S. at 397.
27 But Defendant Ortiz's subjective belief was relevant to this standard. Ortiz
28 acknowledges in his incident report that he holstered his firearm before Powell

9

was taken to the ground because he "did not see a weapon in [Powell's] hands." (ECF No. 171 at 160.) A reasonable jury could conclude from this that Ortiz did not believe Powell to be armed. This fact is relevant, under an objective standard, to the question of whether Powell posed a threat to officers or others that justified a heightened use of force. Judge Denney was not wrong to consider this information in his R&R.

Defendants' second argument provides several reasons as to why a reasonable juror might find that Powell posed a threat to Defendant Ortiz's safety, including the fact that Powell placed his arm under his body and Ortiz could have reasonably believed that Powell was concealing a weapon. But the question for the Court is not whether facts exist to support a finding that Powell posed a credible threat. The question is whether facts exist to support a finding that he *did not* pose such a threat.

The Court concludes that such facts exist, and there is a genuine issue of material fact that precludes judgment on this point. As Judge Denney notes "[a]t the point the force at issue was used, Plaintiff was on the ground, underneath Pepper, and multiple other law enforcement officers were present at the scene." (ECF No. 180 at 11.) A reasonable juror could find that Powell posed little risk to anyone in this situation. Further, a reasonable juror could find that Powell kept his arm under him to brace himself from the pressure of Defendant Ortiz's baton and Ortiz could not have reasonably concluded that Powell was concealing a weapon.

Because a genuine issue of fact exists that precludes judgment on this point, Defendants' second objection is overruled.

**C. OBJECTION 3**

Defendants next object that the video evidence blatantly contradicts Judge Denney's conclusion that, when Powell placed his right arm underneath his head, he did so as a "reasonable response to Ortiz's use of the baton against him." (ECF

10

No. 183 at 10 (quoting ECF No. 180 at 12).) The Court overrules this objection.

Again, the video evidence is open to multiple interpretations on this point, and it is the job of the factfinder to identify the appropriate interpretation. "[A]n officer's 'provocative conduct' can trigger an individual's 'limited right to offer reasonable resistance.'" *Young*, 655 F.3d at 1164 (quoting *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 921 (9th Cir. 2001)) (holding that the jury could conclude that the plaintiff's conduct of moving and circling was a reasonable response after he was pepper sprayed); *Blankenhorn v. City of Orange*, 485 F.3d 463, 479-80 (9th Cir. 2007) (holding that the jury could conclude that there was a limited right to resistance where plaintiff was gang tackled without warning)).

As the Court noted above, a jury could reasonably find that Ortiz exerted significant force against Powell, pressing his skull against the pavement, and that Powell placed his arm under his head as a limited form of resistance, in order to create a layer of padding between his skull and the pavement. (*See* ECF Nos. 153-1 at 22:20-22:29; 153-2 at 00:25-00:31.)

**D. OBJECTION 4**

Defendants object that Judge Denney's order does not identify the clearly established right that Ortiz is alleged to have violated with sufficient specificity. The Court disagrees and overrules this objection.

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). "Although this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). "This inquiry 'must be undertaken in light of the specific context of the case, not

as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "'[S]pecificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12)).

In the summary judgment context, "summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party." *Blankenhorn v. City of Orange*, 485 F.3d at 477 (citation omitted).

Reading the facts in a light most favorable to Powell, Powell was prone on the ground, under the weight of one officer, surrounded by several other officers, and not resisting for the duration of the challenged use of force. Ortiz first used both hands to strike Powell in the back of the neck or upper back with his baton. Ortiz then used the weight of his body to drive the baton against the back of Powell's neck another two times, striking Powell's skull into the pavement. Ortiz spent around sixteen seconds pressing into Powell's neck or back with the force of his bodyweight. Then, after Powell was handcuffed and subdued, Ortiz used his hand to press his bodyweight into Powell's skull while standing up.

The caselaw surrounding excessive force has clearly established that "continued force against a suspect who has been brought to the ground can violate the Fourth Amendment." *Zion v. County of Orange*, 874 F.3d 1072 (9th Cir. 2017). Further, in *Jones v. Las Vegas Metropolitan Police Department*, the court held that the use of intermediate force on a fleeing suspect was originally justified, but there was a triable issue of material fact as to whether the officers used excessive force when they continued to use intermediate force when the suspect was prone and on the ground, had no weapon and was not threatening officers while he was being handcuffed.

These cases clearly establish with sufficient specificity that Ortiz's use of

1  force against Powell may have been excessive under the circumstances.

2  **E. OBJECTION 5**

3  Defendants object that Judge Denney erred when he relied on medical records, submitted by Powell, that were not properly authenticated. This objection is relevant to the nature and severity of Ortiz's use of force, since that prong examines "the risk of harm and the actual harm experienced," *Williamson v. City of Nat'l City*, 23 F.4th 1151, 1152 (9th Cir. 2022), and the medical records support Powell's contention that he was harmed by Ortiz's use of force. Defendants appear only to object to a procedural failure to authenticate and not to the actual authenticity of the medical records. (ECF Nos. 183 (citing ECF No 175 and objecting that Mr. Powell's medical records are "unauthenticated"); 175 at 10 ("Ortiz and Pepper object to [the consideration of Mr. Powell's medical records] on the basis that they are unauthenticated").) They do not identify a particular procedural hurdle that Mr. Powell failed to overcome.

While authentication is required for documents to be considered in a motion for summary judgment, it can be accomplished in different ways. *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (quoting *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To authenticate a document, the party seeking authentication must "produce evidence sufficient to support a finding that the item is what the [that party] claims it is." Fed. R. Evid. 901(a). Under Rule 901(b)(4), documents can be authenticated through a review of their "appearance, contents, substance, internal pattern, or other distinctive characteristics . . . taken together with all the circumstances." Fed. R. Evid. 901(b)(4); *see also Las Vegas Sands,* 632 F.3d at 533 ("where personal knowledge is not relied upon to authenticate [a] document, the district court must consider alternative means of authentication under Federal Rules of Evidence 901(b)(4)") (emphasis omitted); *Orr,* 285 F.3d at 778 n. 24 (noting that district courts have authenticated letters "by the linkage between the dates of postmarks and

defendant's location on the days [the] letters [were] mailed" and a diary "by reviewing its contents").

Here, the appearance, contents, and substance of Powell's proffered medical records support a finding that they are what Powell claims them to be. The medical records appear identical to the records that the Nevada Department of Corrections regularly creates, and which incarcerated plaintiffs regularly submit to this Court. *See Las Vegas Sands*, 632 F.3d at 532; *McMaster v. Spearman*, No. 1:10-cv-01407-AWI-SKO (PC), 2014 WL 4418104, at *3 (E.D. Cal. Sep. 5, 2014) (holding plaintiff's prison records to be authentic under Fed. R. Evid. 901(b)(4)); *Abdullah v. CDC*, No. CIV S–06–2378 MCE JFM P, 2010 WL4813572, at *3 (E.D. Cal. Nov. 19, 2010) (same).

The Court's opinion is bolstered by the fact that Defendants do not appear genuinely to contest the authenticity of Mr. Powell's medical records but only the procedure by which Mr. Powell submitted them. (*See* ECF Nos. 175, 183); *see also Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. June 5, 2006) (holding that, "where the objecting party does not contest the authenticity of the evidence submitted, but nevertheless makes an evidentiary objection based on purely procedural grounds," the court should consider the evidence); *Sanchez v. Penner,* No. CIV S–07–0542 MCE EFB P, 2009 WL 3088331, at *5 (E.D. Cal. Sept. 22, 2009) (overruling defendant's authenticity objection, in part, because it is purely procedural and "defendant does not actually contest the authenticity of the documents plaintiff has submitted"); *Johnson v. Roche,* No. CIV S–06–1676 GEB EFB P, 2009 W L 720891, at *6 (E.D. Cal. Mar. 13, 2009) (same); *McMaster*, 2014 WL 4418104, at * 3 ("If Defendants genuinely disputed the authenticity of a particular prison record, they could have made a more specific objection."). It is unclear that a district court is barred from considering evidence when, despite a failure to properly authenticate, the evidence is *admissible* and its authenticity is not genuinely in dispute. Fed. R.

1   Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute
2   a fact *cannot* be presented in a form that *would be admissible* in evidence.")
3   (emphasis added); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At
4   the summary judgment stage, we do not focus on the admissibility of the
5   evidence's form. We instead focus on the admissibility of its contents."); *Block v.*
6   *City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary
7   judgment, a party does not necessarily have to produce evidence in a form that
8   would be admissible at trial, as long as the party satisfies the requirements of
9   [Fed. R. Civ. P. 56]."); *Ford v. Fletes*, 56 Fed. App'x 318, 318-19 (9th Cir. 2003)
10  ("Although [plaintiff's] medical records . . . were not authenticated, sufficient
11  indicia of authenticity supported their admissibility.") (internal citations omitted).
12      Mr. Powell's medical records located at ECF No. 171, pages 63-95, are
13  authentic, and Judge Denney properly considered them. Defendants' objection
14  on this point is overruled.

15  **F. OBJECTION 6**

16      Defendants object that Judge Denney should have found Powell's crimes
17  to be serious and to have weighed in favor of a heightened use of force. This issue
18  is relevant to prong 1 of the "government's interest" analysis, which asks the
19  court to evaluate "the severity of the crime at issue." *Miller*, 340 F.3d at 964. It is
20  also relevant to prong 2, since the Ninth Circuit has sometimes used "severity of
21  the crime" analysis as a proxy for its "immediate danger." *S.R. Nehad v. Browder*,
22  929 F.3d 1125, 1136 (9th Cir. 2019); *see also Andrews v. City of Henderson*, 35
23  F.4th 710, 717 (9th Cir. 2022); *Smith v. City of Hemet*, 394 F.3d 689, 702-03 (9th
24  Cir. 2005).

25      Powell pled no contest to three felonies relevant to Ortiz's use of force:
26  eluding a police officer in a manner posing a danger to person; attempted assault
27  with a deadly weapon; receiving, possessing or withholding stolen goods. (ECF
28  No. 153-3.) He is also alleged to have committed an auto burglary and to have

attempted to strike an officer's car while in a high-speed pursuit. (ECF No. 171 at 160, 163-64.) There is no indication, in the record before the Court, that Powell admitted to these allegations.

The above crimes and allegations are serious. But the caselaw cautions that the Court must "focus on the *immediate* threat of harm" and consider "the danger a suspect poses *at the time force is applied.*" *Andrews*, 35 F.4th at 717 (emphasis in original) (internal quotation marks and citations omitted). The Ninth Circuit has held that crimes as serious as armed robbery, assault, and brandishing a knife do not justify an officer's use of force when, at the time the force was used, the suspect could no longer be viewed as dangerous. *Id.* (holding that armed robbery "provides little, if any, basis for the officers' use of physical force" when plaintiff was not armed and not posing an immediate threat to anyone at the time force was used); *S.R. Nehad*, 929 F.3d at 1136 (same, for plaintiff's knife brandishing and felonious threats when the brandishing had ended by the time the officer arrived and officer used deadly force); *Smith*, 394 F.3d at 702-03 (same, for assault and domestic abuse when plaintiff and victim were separated and plaintiff was standing outside his home in pajamas).

By the time Ortiz employed force in question, Powell was on the ground, underneath one officer, and multiple other officers were present at the scene. Given this, a reasonable jury could conclude that, whatever the severity of Mr. Powell's crimes, he no longer posed any threat at the time Ortiz applied the challenged force.

**G. OBJECTION 7**

Defendants object that Judge Denney erred by failing to analyze the failure to intervene claim against Defendant Pepper separately from the excessive force claim against Defendant Ortiz.

Defendants have provided no basis for granting judgment in favor of Pepper and therefore have failed to meet their burden on summary judgment. "On

16

summary judgment, the moving party bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017). In Defendants' motion for summary judgment, their reply to that motion, and now in their objection, they fail to identify any factual or legal basis for judgment in Pepper's favor. (*See* ECF No. 181 at 6 n.4 (noting that, in Defendants' motion for summary judgment, Pepper made no argument that he did not have a realistic opportunity to intercede in the alleged use of excessive force).) They provide no legal standard for failure to intervene claims and cite no facts suggesting that such a claim would be untenable against Pepper.

Defendants have failed to meet their burden, and their objection on that ground is denied.

## V.   CONCLUSION

It is therefore ordered that Defendants Brenton Pepper and Bartolo Ortiz's objection to Judge Denney's Report and Recommendation (ECF No. 183) is overruled in part and sustained in part.

It is further ordered Judge Denney's Report and Recommendation recommending summary judgment in favor of Plaintiff Jeremy Powell (ECF No. 180) is accepted and adopted, except as otherwise indicated in this order.

It is further ordered that Defendants' motion for summary judgment (ECF No. 153) is denied.

Dated this 28th day of August 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE